# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The Estate of Dolores Taylor, ) | Civil Action No. 2:19-2487-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| John Alden Life Insurance Company, ) | **ORDER AND OPINION** |
| ) | |
| Defendant. ) | |

Before the Court are cross motions for summary judgment filed by The Estate of Dolores Taylor ("Plaintiff") (Dkt. No. 45) and John Alden Life Insurance Company ("Defendant") (Dkt. No. 44). For the reasons stated below the Court grants in part, denies in part Plaintiff's motion (Dkt. No. 45) and grants in part, denies in part Defendant's motion. (Dkt. No. 46).

## I.   Background

Plaintiff brings several claims against Defendant arising out of Defendant's termination of Dolores Taylor's ("Ms. Taylor") long term care benefits. (Dkt. No. 1-1). Ms. Taylor was diagnosed with multiple sclerosis and purchased a long term care insurance policy ("the Policy") from Defendant in 1997. Ms. Taylor began receiving benefit payments from Defendant in 2013 after Ms. Taylor moved into an assisted living facility. (Dkt. Ns. 44-1). Ms. Taylor moved to The Palms assisted living facility in 2014 where she continued to receive benefits from Defendant. (Dkt. No. 46 at 2)

Defendant maintains that in 2018, its third-party administrator, LifeCare, initiated a standard annual recertification process for Ms. Taylor's continued receipt of benefits. (Dkt. No. 44 at 5). Defendant maintains that as part of the recertification process, LifeCare obtained updated

1

attending physician statements, plans of care, and medical records related to Ms. Taylor for review. (*Id.*). After conducting its investigation, LifeCare determined Ms. Taylor's benefits should be denied. On January 2, 2019, Defendant issued a letter to Ms. Taylor terminating her disability benefits. (Dkt. No. 45-2). On January 24, 2019, counsel for Ms. Taylor sent a letter to Defendant appealing the denial of benefits and enclosing updated medical documents from Ms. Taylor's treating physicians. (Dkt. No. 44-18). On May 31, 2019, Defendant issued a second letter to Ms. Taylor that denied reinstatement of benefits. (Dkt. No. 45-4).

Ms. Taylor initiated this action in July 2019, bringing claims for: (1) breach of contract; (2) breach of contract with bad faith; (3) unjust enrichment; and (4) intentional infliction of emotional distress. (Dkt. No. 1-1). Defendant brought one counterclaim for money had and received, which the parties agreed to dismiss. (Dkt. No. 42). Ms. Taylor continued to reside at The Palms until she was taken to the hospital on December 3, 2020. (Dkt. Nos. 45 at 2; 51 at 5). On December 30, 2020, Ms. Taylor passed away. (Dkt. No. 28). On May 10, 2021, the Court entered an Order substituting The Estate of Dolores Taylor as Plaintiff in this action. (Dkt. No. 39).

Before the Court are Plaintiff and Defendant's cross-motions for summary judgment. (Dkt. Nos. 44, 45).[1] The motions are fully briefed and ripe for the Court's review. (Dkt. Nos. 46; 47; 50; 51).

II. **Legal Standard**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

---

[1] Plaintiff's response in opposition to Defendant's motion for summary judgment withdraws Plaintiff's claim for intentional infliction of emotional distress. (Dkt. No. 46 at 27).

A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the non-moving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment must demonstrate that specific, material facts exist that give rise to a genuine issue. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)). Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### III.  Discussion

Plaintiff's partial motion for summary judgment seeks an Order as to Plaintiff's breach of contract claim. (Dkt. No. 45). Defendant's motion for summary judgment seeks to dismiss all of

Plaintiff's claims, including the claim for punitive damages. (Dkt. No. 44). The Court will review the motions in turn.

### A. Plaintiff's Motion for Summary Judgment (Dkt. No. 45)

Plaintiff moves for summary judgment as to her breach of contract claim on three grounds. First, Plaintiff moves for summary judgment on the ground there is no issue of material fact Ms. Taylor was a Chronically Ill Individual as defined by the Policy. (Dkt. No. 45).

The Policy sets forth six requirements for a policyholder to be eligible to receive policy benefits. The Policy states in relevant part:

> "**PART 3: BENEFIT PROVISIONS**
>
> A.  LONG TERM CARE BENEFIT FOR CONFINEMENT IN A NURSING FACILITY OR CUSTODIAL CARE FACILITY
>
> We will pay the Daily Benefit for Long Term Care . . . if:
>
> 1. You are a Chronically Ill Individual; and
>
> 2. You are receiving Long Term Care pursuant to a plan of care prescribed by a Licensed Health Care Practitioner while confined in a Nursing Facility or Custodial Care Facility; . . .

(Dkt. No. 44-1 at 8). The last four additional conditions of eligibility (numbers 3 - 6) are not restated because those requirements are not in dispute. (Dkt. Nos. 44-1 at 3; 45 at 6). The Policy defines Chronically Ill Individual as "any individual who has been certified within the previous 12 months by a Licensed Health Care Practitioner as:

> 1. Being unable to perform, without substantial assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to loss of functional capacity; or
>
> 2. Requiring substantial supervision to protect such individual from threats to health and safety due to severe Cognitive Impairment."

4

(Dkt. No. 44-1 at 5-7). The Policy defines Activities of Daily Living ("ADLs") as bathing, continence, dressing, eating, toileting, and transferring, with each of those terms separately defined. (Dkt. No. 44-1 at 5-7).

The Court will review the record to determine whether there are any issues of material fact as to whether Ms. Taylor was a Chronically Ill Individual as defined by the Policy. Doctor William Maguire, M.D., Ms. Taylor's treating physician, certified her as a Chronically Ill Individual. Doctor Maguire completed an Attending Physician's Statement ("APS") dated September 17, 2018 that addressed Ms. Taylor's need for long term care services and assistance with various ADLs such as bathing, dressing, toileting, and transferring. (Dkt. No. 45-13). The APS states Ms. Taylor had multiple sclerosis, suffered from cognitive impairment such as poor memory, and sometimes required help. (*Id.* at 5). Dr. Maguire signed the APS and certified Ms. Taylor was a Chronically Ill Individual as defined by the Policy. (*Id.* citing exact Policy language defining Chronically Ill Individual).

LifeCare investigated the accuracy of Ms. Taylor's certification as a Chronically Ill Individual. LifeCare Claims Supervisor Alina Smith testified that as part of the claims handing process, an adjuster determines whether to accept the APS that a policyholder is a Chronically Ill Individual by substantiating the claim. (Dkt. No. 45-21 at 6-7). This requires that LifeCare also obtain medical records and plans of care to understand why a policyholder is unable to perform ADLs to make sure the claim is consistent with the condition. (*Id.*). The process for substantiating a claim is not written in the Policy. (*Id*).

The Palms provided LifeCare with two "Senior Living Resident Evaluations" dated June 25, 2018 and July 3, 2018. The evaluations reflect Ms. Taylor did not require assistance with ADLs. (Dkt. Nos. 44-8; 44-9) (indicating Ms. Taylor was independent with ADLs such as

5

toileting, bathing, and dressing). Ms. Smith completed a Supervisor Claim File Review Request dated December 27, 2018 recommending Ms. Taylor's benefits be denied. (Dkt. No. 45-15). The Request states that Ms. Taylor could get in and out of the shower and bathe independently and that her cognitive status was 28 out of 30 on the Mini Mental State Exam. (*Id.*). Kristen Benson, a Licensed Practical Nurse at The Palms, testified Ms. Taylor did not request any assistance with ADLs and that 99 % of the time Ms. Taylor was with Ted Weathersby, another resident at the facility who resided in independent living. (Dkt. No. 44-15 at 6-8).

The record reveals a contradiction between Dr. Maguire's certification Ms. Taylor was a Chronically Ill Individual who required assistance with bathing, toileting, and dressing and written documentation and testimony that Ms. Taylor did not require assistance with ADLs. Viewing the evidence in a light most favorable to the non-moving party, the Court finds there is a question of material fact as to whether Ms. Taylor was a Chronologically Ill Individual. Plaintiff's partial motion for summary judgment is denied as to whether Ms. Taylor was a Chronologically Ill Individual as defined by the Policy.

Second, Plaintiff moves for summary judgment as to Defendant's defenses in this lawsuit. Plaintiff argues Defendant may not assert Ms. Taylor was not actually receiving long term care in this action because this defense was not set forth in Defendant's original January 2, 2019 letter denying Ms. Taylor's benefits. The January 2, 2019 letter states that Ms. Taylor does not qualify as a Chronically Ill Individual. (Dkt. No. 44-16) (including Policy definitions of Qualified Long Term Care Services, Chronically Ill, and ADLs). Ms. Taylor's counsel appealed the denial and provided additional medical documentation to Defendant. (Dkt. No. 44-18). In a letter dated May 31, 2019, Defendant denied reinstatement of benefits after a review of all medical records received on the ground Ms. Taylor was not a Chronically Ill Individual and was not receiving qualified long

term care services.  (Dkt. No. 44-20) (including Policy definitions of Chronologically Ill Individual, Qualified Long Term Care Services, and ADLs).  Ms. Taylor initiated the instant lawsuit in in July 2019.

Upon a review of the record and viewing the evidence in a light most favorable to the non-moving party, the Court finds Defendant presented this defense in the May 31, 2019 denial letter.

Plaintiff argues Defendant waived the defense that Plaintiff's breach of contract claim fails because she has not shown proof of loss for 2019 and 2020 because Defendant did not present this as a ground for denying Ms. Taylor's benefits.  Defendant argues that it paid benefits through December 31, 2018. (Dkt. No. 47 at 1).  Defendant denied Ms. Taylor's benefits in January 2019.  It appears that Defendant argues "proof of loss" is required for the time frame after it denied Ms. Taylor's claim, which distinguishes its reason for denying Ms. Taylor's benefits from the proof of loss issue.  As such, Defendant is not precluded from proceeding with this defense on summary judgment.

Plaintiff's motion for summary judgment as to Defendant's waiver of defenses after the January 2, 2019 letter is denied.

Third, Plaintiff moves for summary judgment on the ground the plain language of the Policy does not support a requirement that Ms. Taylor receive assistance with two or more ADLs to be eligible to receive benefits. (Dkt. No. 45 at 14).  The Court will review the Policy language to determine whether the Policy language is clear on its face or is ambiguous.

Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect. *Williams v. Government Employees Ins. Co.*, 762 S.E.2d 705, 709 (S.C. 2014) (citing *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009)).  It is a question of law for the court whether the language of a contract is ambiguous. *Id.* (citing *S.C. Dep't of Natural Res. v.*

7

*Town of McClellanville*, 550 S.E.2d 299, 302-303 (S.C. 2001)). Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the policyholder and strictly against the insurer. *Newman v. Banker's Life*, No. 2:10-CV-2135-DCN-WOB, 2012 U.S. Dist. LEXIS, 57631, at * 10-11 (D.S.C. Apr. 25, 2012). A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Williams*, 762 S.E.2d at 709. Whether a contract is ambiguous is to be determined from examining the entire contract, not by reviewing isolated portions of the contract. *Id*. (citing *Farr v. Duke Power Co.*, 218 S.E.2d 431 (1975)).

The Policy in this case states in relevant part:

"**PART 2: DEFINITIONS**

N. "'Qualified Long Term Care Services' means . . . necessary diagnostic, preventative, therapeutic, curing, treating, mitigating and rehabilitative services and maintenance or personal care services which are required by a Chronically Ill Individual and are provided pursuant to a plan of care prescribed by a Licensed Health Care Practitioner. Maintenance or personal care services means any care the primary purpose of which is the provision of needed assistance with any of the disabilities as a result of which the individual is a Chronically Ill Individual (including the protection from threats due to health and safety due to severe Cognitive Impairment). . . .

**PART 3: BENEFIT PROVISIONS**

A. LONG TERM CARE BENEFIT FOR CONFINEMENT IN A NURSING FACILITY OR CUSTODIAL CARE FACILITY

We will pay the Daily Benefit for Long Term Care . . . if:

1. You are a Chronically Ill Individual; and

2. You are receiving Long Term Care pursuant to a plan of care prescribed by a Licensed Health Care Practitioner while confined in a Nursing Facility or Custodial Care Facility; . . . "

(Dkt. No. 44-1 at 5, 7-8).

8

Plaintiff argues the Policy does not require that a policyholder certified as a Chronically Ill Individual receive long term care that assists with two or more ADLs. Pursuant to the Policy, a policyholder certified as a Chronically Ill Individual must require assistance with at least two ADLs for a period of at least ninety days; or require substantial supervision to protect from threats to health and safety due to severe cognitive impairment. (*Id.* at 6). The definition of qualified long term care is comprised of various services (diagnostic, preventative, therapeutic, etc . . . ) that are required by a Chronically Ill Individual. Reading the contract as a whole, the Court finds Part 2N and Part 3A2 of the Policy may be reasonably interpreted in more than one way and are ambiguous as to whether a policyholder certified as a Chronically Ill Individual and residing at a covered facility must receive long term care that assists with two or more ADLs. The lack of clear meaning creates an ambiguity that the Court must construe against the insurer. *Crossman Comtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 592-93 (S.C. 2011). The policy does not support an interpretation that a policyholder certified as a Chronically Ill Individual must receive long term care related to assistance with two or more ADLs. Plaintiff's partial motion for summary judgment is granted on this ground.

Plaintiff's partial motion for summary judgment is granted in part, denied in part.

### B. **Defendant's Motion for Summary Judgment (Dkt. No. 46)**

#### a. **Breach of Contract**

Defendant moves to dismiss Plaintiff's breach of contract claim on several grounds which the Court will discuss in turn. First, Defendant argues Plaintiff fails to produce any evidence Ms. Taylor received long-term care between 2019 and 2020. The Policy states a policyholder must receive long term care pursuant to a plan of care prescribed by a licensed health care practitioner while confined in a nursing care facility. (Dkt. No. 44-1 at 9). The Policy defines qualified long

9

term care services as necessary diagnostic, therapeutic, rehabilitative services, among others. (Dkt. No. 44-1 at 8). In addition, qualified long term care includes maintenance or personal care which are defined as any care for which the primary purpose is assistance with any of the disabilities as a result of which the individual is Chronically Ill. (*Id.*).

Plaintiff's counsel submitted updated medical documents from Ms. Taylor's treating physicians dated January 2019. (Dkt. No. 47-9). The documents indicate Ms. Taylor had multiple sclerosis, was permanently disabled, and required assistance with ADLs such as dressing, bathing, toileting, cooking, and cleaning. (Dkt. No. 47-9). Physical Examination/Plan of Care Forms dated September 30, 2018 and March 11, 2019 order that Ms. Taylor receive evaluations, treatment for physical therapy, occupational therapy, and speech therapy. (Dkt. No. 45-14). The plans indicate Ms. Taylor's multiple sclerosis diagnosis can be managed by residing in an assisted living facility. (*Id*). Ms. Smith's Supervisor Claim File Review Request states that in August 2018, a Nurse Care Manager recommended Ms. Taylor receive a health home aid for two hours per day, seven days per week to provide Ms. Taylor assistance with dressing. (Dkt. No. 45-15 at 2).

The record reflects that in 2019, Ms. Taylor's treating physicians provided updated medical documents as to her diagnosis and required assistance with ADLs and Ms. Taylor had a Plan of Care that recommended physical therapy. Upon a careful review of the record and viewing the evidence in the light most favorable to the non-moving party, the Court finds there is an issue of material fact as to whether Ms. Taylor received qualified long term care services.

Second, Defendant moves for summary judgment as to Plaintiff's breach of contract claim on the ground it is time-barred because Plaintiff failed to comply with certain express conditions of the Policy. (Dkt. No. 44 at 14). Defendant argues Plaintiff failed to submit proof of loss showing Ms. Taylor received assistance with ADLs for 2019-2020. (Dkt. No. 44 at 14). Defendant

maintains "proof of loss must periodically and continuously be provided to show eligibility for the . . . benefit." (Dkt. No. 47 at 2). Plaintiff argues there is no provision in the policy for proof of loss for recertification of continuous benefits. (Dkt. No. 46 at 12, 21).

The Court will review the record as to whether Plaintiff submitted proof of loss for Ms. Taylor's claim. The Policy states that a policyholder must provide the insurer with written proof of loss for any claim for loss for which the policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the insurer is liable. (Dkt. No. 44-1 at 12). In January 2013, Ms. Taylor submitted a Notice of Claim to Defendant for benefits indicating she suffered from multiple sclerosis and needed assistance with bathing and dressing. (Dkt. No. 44-2). LifeCare arranged for Plaintiff's evaluation by a registered nurse for activation of benefits. (Dkt. No. 44-3). The registered nurse certified Ms. Taylor was a Chronically Ill Individual and would require assistance with at least two ADLs for at least ninety days. (*Id.*). Ms. Taylor moved to an assisted living facility in 2013 and subsequently began receiving benefit payments. Doctor Maguire completed an APS on September 17, 2018 certifying Ms. Taylor was a Chronically Ill Individual, had multiple sclerosis, and required assistance with daily living. (Dkt. No. 45-13).

After Defendant denied Ms. Taylor's benefits on the ground she did not meet eligibility requirements as a Chronically Ill individual, Ms. Taylor's counsel submitted updated medical documents from Ms. Taylor's treating physicians dated January 2019. The documents state Ms. Taylor was a Chronically Ill Individual who suffered from multiple sclerosis and required assistance with daily living. (Dkt. No. 45-15). Defendant issued a denial letter on May 31, 2019 indicating Ms. Taylor's benefits would not be reinstated because she did not qualify as a

Chronically Ill Individual and she was not receiving qualified long term care services. (Dkt. No. 44-20). On July 25, 2019, Plaintiff filed the instant lawsuit.

The record demonstrates that Plaintiff submitted a claim for long term care in 2013 and after her benefits were denied in 2019, she appealed the determination and submitted additional documentation from her attending physicians. Viewing the evidence in a light most favorable to the non-moving party, the Court finds there is an issue of material fact as to whether Plaintiff submitted proof of loss for Ms. Taylor's claim.

Defendant's motion for summary judgment as to Plaintiff's breach of contract claim is denied.

### b. Bad Faith Breach of Contract

Defendant moves for summary judgment as to Plaintiff's claim for bad faith breach of contract. To succeed on a bad faith failure to pay insurance benefits claim, a plaintiff must prove: "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay the benefits; (3) resulting from insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; [and] (4) causing damage to the insured." *Kelaher v. Connell & Conner, P.C. v. Auto-Owners, Ins. Co.*, 440 F. Supp. 3d 520, 531 (D.S.C. 2020). Where an insurer possesses "a reasonable ground for contesting a claim, there is no bad faith." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 397 (S.C. 1992).

Defendant argues it is undisputed Plaintiff did not submit proof of loss for the years 2019 and 2020 for it to consider paying benefits, and for this reason there can be no finding Defendant acted unreasonably with respect to handling any claim for 2019 and 2020. The Court previously held there are issues of material fact as to whether Plaintiff submitted proof of loss. Ms. Smith

testified there were certain deficiencies and inconsistencies in Ms. Taylor's claim file that required an independent assessment of Ms. Taylor's condition and required care. (Dkt. No. 44-11). Ms. Smith testified LifeCare was unable to schedule an independent assessment because Ms. Taylor refused, thus Ms. Smith denied Ms. Taylor's benefits with what was in the file. (*Id.* at 10-11). Viewing the record in a light most favorable to the non-moving party, the Court finds there are issues of material fact as to the reasonableness of Defendant's conduct during the investigation and the determination to deny benefits.

Defendant's motion for summary judgment as to Plaintiff's bad faith breach of contract claim is denied.

### c. Unjust Enrichment

Defendant moves for summary judgment as to Plaintiff's claim for unjust enrichment. Defendant argues the claim fails because it is undisputed that an express contract governs the parties' relationship. (Dkt. No. 44 at 10). The existence of an express contract bars a claim for unjust enrichment, quantum meruit, or other quasi-contractual claims. *Swanson v. Stratos*, 564 S.E.2d 117, 119 (S.C. 2002); *Boldt Co. v. Thomason Elec. & American Contractors Indem. Co.*, 820 F. Supp. 2d 703 (D.S.C. 2007). Plaintiff argues Defendant denied benefits in part due to provisions not contained within the Policy. (Dkt. No. 46 at 27) (citing Dkt. No. 45-21 at 36-65, 129). However, it is clear that Plaintiff's claims are based on the express contract with Defendant and whether Defendant has an obligation to pay benefits are governed by the terms of the Policy. Plaintiff's claim for unjust enrichment is barred by the presence of the parties' express contract.

Defendant's motion for summary judgment as to Plaintiff's unjust enrichment claim is granted.

### d. Punitive Damages

Defendant moves for summary judgment as to Plaintiff's claim for punitive damages because Plaintiff fails to present evidence that not paying benefits in 2019 and 2020 was unreasonable. (Dkt. No. 44 at 10). Plaintiff has the burden of proving by clear and convincing evidence, that an insurer acted willfully, wantonly, or recklessly in denying a claim, before recovering punitive damages. *Doe v. Northwestern Mutual Life Ins. Co.*, No. 2:10-cv-2961-DCN, 2012 WL 2405510 (D.S.C. June 26, 2012); *Nicholas v. State Farm Mutual Auto. Ins. Co.*, 306 S.E.2d 616 (S.C. 1983).

Plaintiff's response in opposition presents a number of arguments as to why there is a question of material fact as to whether Defendant's actions in denying the claim were willful, wanton, or reckless. For example, Plaintiff argues that for more than sixty months Defendant never requested confirmation of care before paying benefits to Ms. Taylor, and only requested confirmation of residency in the assisted living facility. (Dkt. No. 46 at 2 citing Dkt. Nos. 45-9, 45-11). Plaintiff argues Defendant misrepresents that the "recertification" was performed "yearly" as Defendant only recertified on February 17, 2017 and March 30, 2016, but neither of those recertification processes required an analysis of Ms. Taylor's medical records. (Dkt. No. 46 at 21-22 citing Dkt. No. 46-6). The Court finds there are issues of material fact as to Plaintiff's claim for punitive damages.

Defendant's motion as to Plaintiff's claim for punitive damages is denied.

### e. Attorney's Fees

Defendant moves on summary judgment to dismiss Plaintiff's claim for attorney's fees. South Carolina law provides that policyholders can recover attorney's fees when they show that a denial of a claim was unreasonable or in bad faith. *See* S.C. Code Ann. § 38-59-40. The Court previously determined Plaintiff's claim for bad faith breach of contract and breach of contract

involves issues of material fact. Therefore, Plaintiff's claim for attorney's fees also involves issues of material fact.

Defendant's motion for summary judgment as to Plaintiff's claim for attorney's fees is denied.

### IV.  Conclusion

For the reasons stated below, the Court **GRANTS IN PART, DENIES IN PART** Plaintiff's motion for summary judgment. (Dkt. No. 45).

The Court **GRANTS** Plaintiff's motion that the Policy is ambiguous as to Part 2N and Part 3A2. The Court otherwise **DENIES** the motion.

The Court **GRANTS IN PART, DENIES IN PART** Defendant's motion for summary judgment. (Dkt. No. 44). The Court **GRANTS** the motion as to Plaintiff's unjust enrichment claim. The motion is otherwise **DENIED**.

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

December 9, 2021
Charleston, South Carolina